8 F.3d 30
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ronald Michael BACKUES, Defendant-Appellant.
 No. 92-10658.
 United States Court of Appeals, Ninth Circuit.
 Submitted Aug. 11, 1993.*
Decided Sept. 24, 1993.
 
 Before: KOZINSKI, THOMPSON and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 * MOTION TO SUPPRESS
 
 1. PROBABLE CAUSE
 A. Reliability of the Informant
 
 3
 McJunkins was a reliable informant because: (1) his statements admitting personal involvement in a large-scale drug operation were against his penal interest, see United States v. Dozier, 844 F.2d 701, 706 (9th Cir.), cert. denied, 488 U.S. 927 (1988); (2) much of his information was corroborated by independent investigation, see id. at 706; (3) his information was quite detailed, see United States v. Fried, 576 F.2d 787, 791-92 (9th Cir.), cert. denied, 439 U.S. 895 (1978); (4) his accounts of the dinner party, the actual marijuana transfer, and his pay-off, were based on personal observation, see United States v. Landis, 726 F.2d 540, 543 (9th Cir.), cert. denied, 467 U.S. 1230 (1984); and, (5) he was taken into Backues' confidence when Backues discussed his past illegal activities and future plans, see id. at 542.
 
 
 4
 Backues' discussion of future and past illegal activities, and the fact that he purchased assets that were beyond the means of a government-salaried Border Patrol agent were inherently suspicious. See generally Illinois v. Gates, 462 U.S. 213, 243, n. 13 (1983). Moreover, McJunkins' statements demonstrated that he was in a position to know what he claimed to know. At that point, seemingly innocent details like the ownership of a safe deposit box or the purchase of a boat, car and motorcycle became suspicious. See id. at 243-46; Draper v. United States, 358 U.S. 307, 312-13 (1959).
 
 
 5
 McJunkins was not unreliable merely because he was unknown to the police and had never been used before as an informant. "[F]or every informant there must be a first time to inform." United States v. Fluker 543 F.2d 709, 714 (9th Cir.1976).
 
 
 6
 The inculpatory nature of McJunkins' statements offset any inherent unreliability of information given for self-serving purposes. See Dozier, 844 F.2d at 707.
 
 
 7
 B. Evidence Connecting Items Sought With Residence
 
 
 8
 A search for warrant may be issued only upon showing of probable cause. For probable cause to exist, there must be a nexus between the articles of property sought and both (1) the suspected criminal behavior, and (2) the place to be searched, here Backues' residence. See United States v. Rodriquez, 869 F.2d 479, 484 (9th Cir.1989).
 
 
 9
 i. Categories One Through Seven
 
 
 10
 Categories one through seven of the supporting affidavit listed documentary evidence, assets and paraphernalia connected to Backues' ongoing drug smuggling operation. Where there is an ongoing criminal activity, evidence of documentary records and tools of the trade would reasonably be found on the premises. Dozier, 844 F.2d at 707; see United States v. Greany, 929 F.2d 523, 525 (9th Cir.1991); United States v. Foster, 711 F.2d 871, 878 (9th Cir.1983), cert. denied, 465 U.S. 1103 (1984). Therefore, there was probable cause to issue the warrant as to these categories.
 
 
 11
 ii. Category Eight
 
 
 12
 The property sought in category eight exceeded the scope of the suspected criminal activity, and there was no reason to believe that property evidencing violations other than drug smuggling would be on the premises. Therefore, there was no probable cause to issue the warrant as to this category of property.
 
 C. Staleness of the Information
 
 13
 The police had probable cause to search for evidence of ongoing drug trafficking at Backues' residence, see Foster, 711 F.2d at 878-79--not merely for the marijuana transferred to McJunkins or the $100,000. Thus, "in light of the particular facts of the case and the nature of the criminal activity and property sought," Greany, 929 F.2d at 525, the information did not become stale in the six weeks before the warrant issued. Backues' alleged intent to withdraw from the trafficking business does not change this determination.
 
 2. SEARCH WARRANT
 
 14
 The search warrant's description of things to be seized "must be specific enough to enable the person conducting the search reasonably to identify the things authorized to be seized." United States v. Spilotro, 800 F.2d 959, 963 (9th Cir.1986). "This requirement prevents general, exploratory searches and indiscriminate rummaging through a person's belongings." Id.
 
 
 15
 Categories one through seven are sufficiently particularized, however category eight is impermissibly general. There was no probable cause to seize property beyond that which was connected to the drug smuggling operation. By permitting officers to search for all property evidencing violations of any state or federal statute, the police were given carte blanche to indiscriminately rummage through Backues' belongings with no restrictive standard. And, the Government could have limited the scope of the search to drug related evidence, as it did in categories one through seven. See generally id. The warrant is not saved by Andresen v. Maryland, 427 U.S. 463, 480 (1976), because the challenged phrase could not be reasonably read to modify the previously specified evidence and crime.
 
 3. SEVERANCE DOCTRINE
 
 16
 Although evidence obtained as a direct result of an illegal search is normally barred by the exclusionary rule, Wong Sun v. United States, 371 U.S. 471, 488-89 (1963), under the doctrine of severance, invalid portions of a search warrant may be stricken and the remaining portions held valid. United States v. Gomez-Soto, 723 F.2d 649, 654 (9th Cir.), cert. denied, 466 U.S. 977 (1984). Thus, only evidence obtained pursuant to the invalid portions need be suppressed. Id. The severance principle logically applies also where, as here, there is insufficient probable cause to issue a warrant based on the overbreadth of the supporting affidavit's list of suspected items which is identical to the descriptive terms of the search warrant.
 
 
 17
 Because the district court found that all the physical evidence seized was derived from categories one through seven, and because these categories were sufficiently particularized, the physical evidence was admissible. Similarly, Backues' inculpatory statements were also related to the valid portions of the search warrant inasmuch as they pertained solely to the drug smuggling operation and not to any other violation of the Arizona Revised Statutes or federal law. Therefore, these statements were also admissible. The district court properly denied Backues' motion to suppress.
 
 II
 MOTION TO COMPEL
 
 18
 Backues cites, and we have found, no authority to support his theory that a trial court can be compelled to order the Government to enter into a plea agreement, or can be compelled to dictate the terms of the agreement. On the contrary, a prosecutor need not enter into a plea bargain at all if he prefers to go to trial. Weatherford v. Bursey, 429 U.S. 545, 561 (1977) ("there is no constitutional right to plea bargain"). The district court correctly denied Backues' motion to compel.
 
 III
 STATUTORY ENHANCEMENT
 1.SUFFICIENCY OF THE INDICTMENT
 
 19
 Due process does not require that the indictment inform a defendant of the quantity of drugs for purposes of a § 841(b) sentencing enhancement so long as the defendant "received sufficient notice and had an opportunity to dispute enhancement based on quantity at the time of sentencing." United States v. Arias-Villanueva, No. 91-30393, slip op. at 7581, 7610 (9th Cir. July 20, 1993); see generally United States v. Sotelo-Rivera, 931 F.2d 1317, 1319 (9th Cir.1991) (quantity is not an element of a substantive offense under § 841(a), rather it is a penalty provision of § 841(b) to be decided by the district court at sentencing), cert. denied, 112 S.Ct. 1186 (1992). Backues received sufficient notice under Arias-Villanueva because he stipulated in the plea agreement that the total weight of the marijuana was 1000 kilograms, and he had the opportunity to dispute the enhancement based on quantity in his Points and Authorities and at the sentencing hearing.
 
 2. AGGREGATION OF AMOUNTS
 
 20
 Backues urges us to address an alleged conflict between § 846 and the Sentencing Guidelines on aggregation of quantities. His premise is that the "same penalty" provision of § 846 does not allow aggregation of the 50 and 100 kilo offenses to reach 1000 kilos and that therefore, the district judge erred by relying on the ten year statutory minimum of § 841(b)(1)(A)(vii). We reject this argument for several reasons. First, the district judge clearly did not feel bound by the statutory minimum; in fact, he explicitly rejected it and sentenced Backues under the Guidelines. Second, a conspiracy is not a collection of individual offenses, but one offense which encompasses all drug transactions over the course of the conspiracy. Thus, the "offense" in § 846 must take account of the aggregated quantity. There's no conflict between the statute and the Guidelines, and where there is no conflict, the Guidelines control. United States v. Berlier, 948 F.2d 1093, 1095 (9th Cir.1991). Since Backues admitted to dealing with more than 1000 kilos over the course of the conspiracy, the district judge did not err in sentencing him accordingly. And finally, even if the district judge were to disaggregate and sentence Backues to 5-40 years for each 100 kilo act, Backues would receive no shorter a sentence. 21 U.S.C. § 841(b)(1)(B).
 
 
 21
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3