**UNITED STATES of America Plaintiff,**

v.

**Nancy L. COLP Defendant.**

**No. CR. A. 02–511–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

March 10, 2003.

Dana J. Boente, Assistant United States Attorney, United States Attorney's Office, Alexandria, VA, for Plaintiff.

Brian C. Drummond, Whitestone, Brent, Young & Merril, Fairfax, VA, for Defendant.

## *MEMORANDUM ORDER*

LEE, District Judge.

THIS MATTER is before the Court for sentencing of Defendant Nancy L. Colp and Defendant's Motion for Downward Departure from the applicable sentencing guidelines. Defendant was convicted of

one count of income tax evasion in violation of 26 U.S.C. § 7201. The issue before the Court is whether a downward departure based on exceptional family circumstances is warranted when Defendant is the sole caretaker of her disabled husband, who suffers from traumatic brain injury and seizure disorder as a result of a 1995 automobile accident.

Pursuant to the United States Sentencing Guidelines, the Presentence Report properly computed Defendant's base offense level at 14, and subtracted 2 offense levels for acceptance of responsibility. As such, the Court finds that the offense level is 12, which provides for a sentencing range of 10 to 16 months of incarceration.

Defendant's motion for downward departure is based on family ties and responsibilities under U.S.S.G. § 5H1.6. Ms. Colp contends that her family circumstances are exceptional and distinguish this case from the heartland of cases covered by the Guidelines. For the reasons stated below, the Court holds that a downward departure from the applicable sentencing guidelines based on Defendant's family ties and responsibilities is warranted because Defendant has unique family circumstances; her husband's medical condition and the constant care she provides are atypical and outside of the heartland of cases covered by the guidelines.

## I. BACKGROUND

Defendant Nancy L. Colp was convicted of one count of income tax evasion in violation of 26 U.S.C. § 7201. Between 1996 and 2000, she was employed as the business manager/controller of Platinum Care, a company that did business as Brooke Nursing Center ("BNC") in Stafford, Virginia. As the business manager of BNC, Ms. Colp managed the day to day activities of BNC.

During the years 1996 though 2000, Ms. Colp made "loans" to BNC and to an associate at BNC, and she received repayments for these loans from BNC in excess of the amount loaned. She failed to report this excess interest reimbursement on her individual income tax returns. In addition, at the direction of the BNC associate, Ms. Colp paid the personal expenses of that associate out of the checking accounts of Brookwood and BNC.

On October 8, 2002, a one-count Criminal Indictment was filed in the United States District Court, Eastern District of Virginia, charging the Defendant with income tax evasion. Ms. Colp pled guilty to the Criminal Indictment. Based on the guilty plea and pursuant to the Sentencing Guidelines, the Presentence Report placed Defendant's base offense level at 14. The offense level was reduced 2 points for acceptance of responsibility. As such, Defendant's offense level is 12 with an applicable Guideline range of 10 to 16 months of incarceration.

Ms. Colp requests that the Court depart from the Guidelines and moves for a downward departure on the basis of family ties and responsibilities. The thrust of Ms. Colp's argument is that she is the sole caretaker of her disabled husband, which distinguishes this case from the heartland of cases covered by the guidelines.

## II. DISCUSSION

Ms. Colp was convicted of one count of income tax evasion in violation of 26 U.S.C. § 7201; the offense level is 12 with an applicable Guideline range of 10 to 16 months incarceration. Ms. Colp requests a downward departure so that she will be able to provide care for her husband, who suffers from traumatic brain injury and seizure disorder due to injuries he sustained in an automobile accident in 1995. Ms. Colp is the sole caretaker for her

disabled husband, as he has no family in the area.

### A. *Standard of Review*

Under the Sentencing Guidelines, a district court must ordinarily impose sentences within the range specified by the applicable guidelines. *See United States v. Rybicki*, 96 F.3d 754, 757 (4th Cir.1996). Each guideline is intended to carve out a "heartland" of cases that are representative of the circumstances and consequences of the ordinary crimes of the type to which the guidelines apply. *Id.* (citing *Koon v. United States*, 518 U.S. 81, 116, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996)) (holding that a district court's decision to depart in an "atypical" case is to be reviewed for abuse of discretion). A district court may only depart from the applicable guideline range if there exists "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." 18 U.S.C. § 3553(b). In deciding whether to depart from the Sentencing Guidelines, this Court adheres to the standard set forth in *Koon* and expounded upon in *Rybicki*.

In *Rybicki*, the court prescribed a five-part analysis for district courts to follow when deciding whether to depart. *Rybicki*, 96 F.3d at 757. First, the court must determine the circumstances and consequences surrounding the offense of conviction. *See id.* Second, the court must decide whether any of these circumstances or consequences appear "atypical" such that they potentially take the case out of the guideline's heartland. *See id.* Third, the court must determine, according to the Guideline's classifications, whether the identified circumstances are a "forbidden," "encouraged," or "unmentioned" basis for departure. *See id.* Fourth, a finding that a factor is "forbidden" ends the inquiry, while a finding that a factor is "encour-

aged," "discouraged," or "unmentioned" requires further analysis. *Id.* "Discouraged" factors are "not ordinarily relevant," but may be relied upon as bases for departure in "exceptional cases." *See id.* (*quoting Koon*, 518 U.S. at 94–95, 116 S.Ct. 2035). The final step in the analysis is for the court to consider whether the circumstances considered take the case out of the applicable guideline's heartland and whether a departure from the guideline's specified range is warranted. *Id.* In making this determination, the court compares the case to other Guidelines' cases, weighs the facts bearing on the outcome, informed by its unique vantage point and day to day experience in criminal sentencing, and then exercises its traditional sentencing discretion. *See Koon*, 518 U.S. at 98, 116 S.Ct. 2035.

The Fourth Circuit has narrowly construed downward departures based on family ties. *See United States v. Spedden*, 917 F.Supp. 404, 408 (E.D.Va.1996). The economic hardship that a family will encounter as a result of the sole provider being imprisoned, standing alone, is insufficient to justify a downward departure. *See United States v. Bell*, 974 F.2d 537, 539 (4th Cir.1992) (holding that circumstances were not exceptional when defendant's wife had recently been laid off and defendant's family was dependent on his income); *United States v. Brand*, 907 F.2d 31, 33 (4th Cir.1990) (holding that situation was not extraordinary when defendant was the sole custodial parent of two minor children). In addition, the illness of family members by itself has usually been insufficient. *See Rybicki*, 96 F.3d at 759 (noting that defendant's family circumstances were not extraordinary when defendant's nine-year old son had neurological problems and defendant's wife was experiencing a period of fragile mental health); *see also United States v. Sweeting*, 213 F.3d 95 (3d Cir.2000) (holding that a departure

was not warranted when defendant was a single mother of five children, and her son had Tourette's Syndrome).

### B. *Analysis*

Applying the *Rybicki* test, the Court finds that a downward departure is warranted based on Ms. Colp's exceptional family ties and responsibilities.

The first factor to consider is the circumstances and consequences of conviction. *Rybicki*, 96 F.3d at 757. In the present case, the Colps face a potentially devastating situation. In 1995, Mr. Colp was involved in a severe motor vehicle accident in which he was thrown from the car; he sustained traumatic brain injury and nerve damage. In addition, Mr. Colp has suffered from numerous other complications related to his traumatic brain injury including depression, cognitive defects, seizure disorder, incontinence, urinary complications, knee pain, shoulder pain, and sleep disturbance. See, Report of Dr. Hillary Hawkins, December 9, 2002. As a result of the cognitive difficulties and the post-traumatic epilepsy, Mr. Colp requires close supervision for his safety and for the administration of his medications. Although he is able to complete simple tasks, he functions primarily with the direction of verbal commands. Thus, the well-being of Mr. Colp stands to be significantly impacted if left without the support of Ms. Colp.

Turning to the second prong, the Court finds that this situation appears "atypical" because Ms. Colp is the sole caretaker for her disabled husband, he has very limited functioning capabilities, and he has no other family in the area who can provide adequate nursing care. Mr. Colp requires constant attention; he tends to forget that his balance is poor and that, with the unpredictable timing of his seizures, he should not undertake household maintenance.

Mr. Colp's physician, Dr. Janet Niemeier, Director of Brain Injury Psychology at the Brain Injury Rehabilitation Unit at Virginia Commonwealth University Hospital in Richmond, Virginia reports:

[H]e sustained a traumatic brain injury in an automobile accident. He had functional and cognitive deficits as a result of that brain injury ... [T]he patient developed a seizure disorder, something that happens in about 10% of the cases up to a year post injury. He also had a bout of major depression as a consequence of his losses of his work and role in the family. Mr. Colp's primary cognitive impairments were memory, reasoning and problem solving at a complex level. As a result of these cognitive difficulties the patient has required close supervision for safety and remembering to take medications. He tends to forget that his balance is poor and that, with the unpredictable timing of his seizures, he should not undertake home repairs that require being on ladders or use of power tools.... [Ms. Colp] was present for all therapies and has participated in extensive training that is offered for family members and caregivers. As such she is uniquely qualified to provide for Mr. Colp's ongoing care needs. Letter of Dr. Janet Neimeier December 4, 2002.

Moreover, Ms. Colp has arranged her work schedule to provide for her husband. When she worked at BNC, she lived close to her office and could go home at lunch or whenever necessary to provide for him. Ms. Colp was also able to work from home as needed. Furthermore, Ms. Colp now provides constant care for Mr. Colp: she prepares his meals, regulates his diet, administers his eleven different medications, and takes him to all necessary medical

appointments[1]. As noted above, Mr. Colp's physician is located in Richmond, Virginia.

Third, the identified circumstances fall into the "Family Ties and Responsibilities" section of the Guidelines and are classified as a "discouraged" basis for departure. *See Rybicki*, 96 F.3d at 757. Thus, because family circumstances are a "discouraged" basis for departure, under the fourth prong of the *Rybicki* analysis, this Court may only depart if it determines that the case is "exceptional." *Id.; see also* U.S.S.G. § 5H1.6 (noting that family ties and responsibilities are "not ordinarily relevant" but may be relied upon in "exceptional" cases).

This Court finds that Ms. Colp's family circumstances are "exceptional" and that a departure from the Guidelines is warranted. Although the Fourth Circuit has construed downward departures based on family ties narrowly, it has noted that it is beyond doubt that circumstances could exist "in which unique family responsibilities might justify a downward departure." *See Brand*, 907 F.2d at 33. The instant case presents such unique and "extraordinary" family circumstances. *See Spedden*, 917 F.Supp. at 408 (noting that although family ties and responsibilities are normally not relevant in determining whether a sentence should be outside the applicable guideline range, a district court may depart upon a finding that a defendant's family ties are "extraordinary").

In *Spedden*, the court found such "extraordinary circumstances" when the defendant was the sole provider for his family, his wife had ovarian cancer, and his child suffered from a rare skin disease. *Id.* The court held that the cumulative nature of medical hardships facing the defendant and his family warranted a downward departure from the Sentencing Guidelines and departed accordingly. *See id.* Similarly, in *United States v. Velez*, 249 F.Supp.3d 716 (E.D.Va.2002), this court granted a downward departure based on family circumstances where defendant was the sole provider for his family and his wife had clinical depression and cervical cancer.

The circumstances in the instant case are similar to *Spedden* and *Velez*, in that Ms. Colp is the *sole caretaker* for her *disabled husband*, who has limited mental and physical capabilities and has no other family in the area who can provide humanitarian care for him[2]. In *Spedden*, the court reasoned that by allowing the defendant to serve twelve months in home confinement, he could provide the basic necessities that his family would need while his wife underwent necessary surgery. *See Spedden*, 917 F.Supp. at 407. The circumstances here are nearly identical; if Ms. Colp is confined to home electronic monitoring, she will be able to provide the nursing care her disabled husband requires.

In addition, this case is distinguishable from the circumstances the Fourth Circuit

1. Dr. Hillary Hawkins December 9, 2002 medical report notes that "[Ms. Colp] has completely changed their home environment and their home situation in order to allow [Mr. Colp] to be as independent as possible.".

2. It goes without saying that nursing home care at government taxpayer expense is an option where there is no humane way to provide for a loved one in extreme need. The fact that such an option may be available is not evidence that the circumstances here are not "extraordinary" because most citizens, if given a choice between being shunted off by society to an institutional nursing home at taxpayer expense versus being cared for by a loving spouse in your own home without cost to the taxpayers, would select home care with a spouse.

has found "unexceptional." *See, e.g., Brand,* 907 F.2d at 33; *Bell,* 974 F.2d at 539. In *Brand,* the court held that defendant's family situation was not exceptional when the defendant was the sole custodial parent for two minor children. *See Brand,* 907 F.2d at 33. Likewise, in *Bell,* the Court held that the situation was not exceptional when defendant was the sole provider for his family. *See Bell,* 974 F.2d at 539. In neither *Brand* nor *Bell,* however, were there exceptional medical situations that exacerbated the family's potential hardship. In the present case, Mr. Colp has cognitive defects and thus needs constant attention to prevent him from injuring himself. In addition, he has seizures, ranging from mild, leaving him trebling and off balance, to grand mal, which thrust his convulsing body to the floor; these seizures occur without warning. As a result, Mr. Colp is entirely reliant upon the Defendant to complete even the most basic activities of daily living.

Because Ms. Colp is the sole caretaker for her disabled husband and because he suffers from seizures, has limited mental and physical capabilities, and requires constant attention, this Court finds that the Defendant's family circumstances are "exceptional" and that a downward departure is warranted.

## III. *CONCLUSION*

The Court concludes that this case presents one of the rare instances where exceptional family circumstances take this case out of the Guidelines' heartland and warrant a downward departure. Based on the exceptional circumstances detailed in this order, the Court departs from the Guidelines and decreases Ms. Colp's adjusted offense level by four levels. This places Ms. Colp's offense level at 8, Criminal Category I, with a Guideline range of 0–6 months.

The Court orders that Ms. Colp is hereby placed on probation for a period of two years. While on probation, Ms. Colp shall comply with the following conditions: (1) Ms. Colp shall provide the probation officer with access to requested financial information; (2) Ms. Colp shall participate in the Home Confinement Program, which shall include electronic monitoring at Ms. Colp's expense, for a period of three months, as directed by the probation officer. During this time she will remain in her place of residence, except for employment and other activities approved in advance by the probation officer; (3) Ms. Colp shall pay a fine in the amount of $5,000; and (4) Ms. Colp shall comply with the requirements of the Internal Revenue Service regarding payment of any and all outstanding income taxes. In addition, the Court acknowledges that Ms. Colp has demonstrated considerable acceptance of responsibility for her crimes by paying significant restitution to the government in excess of $100,000 in back taxes and penalties prior to sentencing.

Because the Court believes that any period of incarceration would serve as an undue hardship on Mr. Colp, the Court confines Ms. Colp to her home, using home electronic monitoring. Home electronic incarceration will restrict Ms. Colp's liberty, require her to adhere to rules of supervision, be monitored by the Probation Office and additionally allow her to continue to provide humane in home nursing assistance to her debilitated husband at her own expense.

For the reasons stated above, it is hereby

ORDERED that Defendant's motion for downward departure based on family ties is GRANTED.

An appropriate Judgment shall issue.

The Clerk is directed to forward a copy of this Order to the Defendant and counsel of record.